STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0767

MURPHY J. PAINTER, SR.

VERSUS

DUSTIN CLOUATRE, HUGHES INSURANCE SERVICES, LLC,
PELICAN POST NEWS, L.L.C., WADE PETITE, RICKY BABIN, ABC
INSURANCE COMPANY, CLINT COINTMENT

*Judgment Rendered:*     DEC 3 0 2024

* * * * * * * *

Appealed from the
23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Case No. 129,894

The Honorable Ashley Bruce Simpson, Judge Presiding

* * * * * * * *

Kim Segura Landry
Gonzales, Louisiana

Counsel for Plaintiff/Appellant
Murphy J. Painter, Sr.

Timothy E. Pujol
Barbara Lane Irwin
Ashley D. Tadda
Gonzales, Louisiana

Counsel for Defendant/Appellee
Clint Cointment

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Chutz, J concurs
by Sut -

Hester, J. concurs

**THERIOT, J.**

In this defamation suit, the plaintiff appeals a summary judgment dismissing his claims against one defendant. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2019, Murphy J. Painter, Sr. and Clint Cointment were both candidates for the public office of Ascension Parish President. Shortly after placing second behind Cointment in the primary election, Painter withdrew from the race on October 21, 2019, and Cointment was elected to the position without opposition. Painter alleged that Cointment had conspired with several other individuals, including Wade Petite, Dustin Clouatre, and Ascension Parish District Attorney Ricky Babin, to cause Painter to withdraw from the election so that Cointment would be elected. The complicated civil conspiracy alleged by Painter involved Clouatre secretly recording a conversation with Painter on February 7, 2019, and Petite having the audio recording edited in order to make it appear that Painter was involved in a crime and then publishing the defamatory recording in an article on his online blog, the Pelican Post News. According to Painter, the purpose of the conspiracy was to get him to withdraw from the election so that Cointment would be elected unopposed and Clouatre's employer, Hughes Insurance Services, L.L.C., would be awarded the parish insurance business by Cointment.

Painter filed a petition for damages against Dustin Clouatre, Hughes Insurance Services, LLC, Pelican Post News, LLC, Wade Petite, Ricky Babin in his capacity as District Attorney for the 23rd Judicial District Court for the Parish of Ascension, Clint Cointment, and Westport Insurance Corporation. Painter alleged that Petite and Clouatre conspired to hide the true substance of his statements, knowingly altered the audio recording, knowingly made false accusations that he committed a crime, and knowingly published the altered recording as evidence of the false accusations in an effort to damage his reputation in the community and

2

advance Cointment's candidacy. Painter's allegations against Cointment were that Cointment participated in a conspiracy with Clouatre and Petite to publish defamatory statements about Painter, which would be detrimental to Painter's campaign, in order to benefit Cointment's campaign for Parish President. In his Third Supplemental and Amended Petition for Damages, Painter alleged:

> Petite, Clouatre[,] and Cointment conspired to hide the true substance of [Painter's] statements, and knowingly altered the recording of [Painter], knowingly made false accusations that [Painter] committed a crime by aiding in the cover-up of the rapes of 5 twelve year old girls, and knowingly published the altered recording as evidence of the false accusations in an effort to damage [Painter's] reputation in the community and advance the candidacy of Cointment and to ultimately benefit from Cointment becoming Parish President.

On August 18, 2023, Cointment filed a motion for summary judgment, urging that Painter's claims against him should be dismissed with prejudice. According to Cointment's motion, Painter's sole claim against him is rooted in the allegation that he was a participant in an alleged civil conspiracy to defame Painter, and Painter "lacks evidence sufficient to meet his burden of proof to establish that Clint Cointment was involved in, had knowledge of, or was a party to an agreement to defame [Painter], which is the basis of the action [Painter] has brought against Clint Cointment." In support of his motion, Cointment filed Painter's original and amending petitions for damages, as well as the depositions of Painter, Cointment, Clouatre, Petite, Brett Hughes of Hughes Insurance, Babin, and Michael Marchand.

In opposition to Cointment's motion, Painter filed his own affidavit; the original and edited tape recordings of his meeting with Clouatre; and excerpts from the depositions of Clouatre, Petite, Marchand, Cointment, Painter, Hughes, and

3

Babin; Petite's affidavit; and certified Verizon phone records for Petite and Clouatre.[1]

*Painter's Deposition*

Painter testified that news of his intention to run for Ascension Parish President was out as early as October of 2018, although he did not officially announce his candidacy for the office until early 2019. According to Painter, the only negative feedback he received regarding his potential candidacy was from the current Parish President, Kenny Matassa, and from those people he considered to be Cointment's supporters. Painter explained that Matassa had chosen not to run for reelection because "a group had gotten [Matassa] indicted and he had to go to court [but] was found not guilty. . . ." Painter testified that when he approached Matassa about his potential candidacy, "[t]he only thing I got was warning about who I was fooling with and to be careful that the same thing didn't happen to me." Painter testified that he met with one of Cointment's supporters, Petite, in October of 2018, and at that meeting, Petite told him that he had "been authorized by Clint Cointment to offer you one of the top positions in the Parish government if you do not run for Parish President." Painter went on to say that Petite "assured me that if I didn't accept the position that he and Clint Cointment was offering me at the time that we, he used the word we, we gonna do you exactly the same that we did Kenny Matassa. So that would probably be the biggest . . . warning or biggest issue that took place or negative was that threat."

Painter testified that after he officially announced his candidacy for Parish President, he was invited to a meeting at the office of Hughes Insurance by Clouatre "to discuss politics but particularly the potential of Hughes Insurance having the opportunity to bid on the Parish Insurance situation." Painter testified

---

[1] Cointment objected to a number of exhibits filed by Painter in opposition to his motion. The trial court sustained Cointment's objection to Petite's and Clouatre's cell phone records, and Cointment withdrew his remaining objections.

that he asked Clouatre several times during the meeting what was going on and whether the meeting was being recorded because it was clear that Clouatre was reading questions off of a computer. Although Clouatre assured him that the conversation was not being recorded and was just between Painter and Clouatre, Painter testified that he became aware almost immediately after the meeting that Clouatre had discussed their conversation with Petite, because he received a text message from Petite early the next day "telling me something that I said in the meeting with [Clouatre]." Although Painter had been suspicious all along that his conversation with Clouatre was being recorded, he testified that after he received the early morning text message from Petite, it became obvious to him that Clouatre had been lying to him when he told him that he was simply trying to understand Painter's position on certain issues and had not yet committed to supporting Cointment in the race and "that [Clouatre] was . . . an operative of Clint Cointment's campaign and that he had some negative reason that he was doing all this." Despite the fact that Clouatre continued to deny having recorded their conversation, Painter testified that beginning in February 2019, "Petite and Clouatre and others in that group had been putting [things] out . . . that they had this secret tape that would eliminate me from getting elected Parish President."

Painter testified that District Attorney Ricky Babin contacted him in August 2019, shortly before qualifying for the election for Parish President began, and told him that Petite had given him an audio recording of Painter, which Babin had forwarded to the state police. Painter testified that Babin told him that he was not being accused of any wrongdoing, but that Babin wanted to discuss the tape with him. Painter testified that he told Babin that "This is some more [of] Petite and Clouatre's bullshit and the déjà vu all over again of Kenny Matassa being indicted so that Clint Cointment would have a chance of getting elected." Painter told Babin that he believed that the recording was being used as a ploy to stop him from

5

qualifying for the race for Parish President, and he ultimately refused to speak to Babin about the recording.

Painter testified that several days after the primary election, in which he placed second behind Cointment, Petite published a story about him in his blog, the Pelican Post News, along with an excerpt from the audio recording. Although Painter admitted that the Pelican Post News story made it clear that he was not being accused of any wrongdoing, he believed that the publication was politically motivated and intended to negatively impact his campaign and benefit Cointment's campaign. According to Painter, after the article was published in the Pelican Post News, "Petite produced the tape and Channel 9 and every other news media in this particular area picked it up that . . . [Babin's] intention was to call me before a Grand Jury to discuss what was on the tape." He testified that after the publication, neither of the other two candidates from the primary would agree to support him in the runoff, and his political consultant informed him that polls showed that undecided voters who had seen the Pelican Post News article were not inclined to vote for him. Based on the combination of these factors, Painter dropped out of the race for Parish President three days later.

Painter admitted in his deposition that any evidence of Cointment's involvement in the alleged conspiracy at issue in this matter was merely circumstantial; however, he expressed the belief that "[t]here's no difference between the conspirators . . . [b]ased on the phone calls [between the alleged co-conspirators], based on the actions and based on the benefits that each one of them got from this event, . . . in my opinion there is no difference." Painter testified that Cointment's campaign made a payment to either Petite or the Pelican Post approximately one week before his October 2018 meeting with Petite, and that when he met with Petite in October of 2018, Petite told him that he was meeting with him on Cointment's behalf. As further proof of the connection between Petite

and Cointment, Painter testified that when he sent a text message to Cointment on January 15, 2019 to inform him that he was running for Parish President and to request a meeting, he received a response from Petite rather than Cointment. Painter also testified to hearing rumors that the audio recording had been played in Cointment's presence at some point; however, he admitted that he had no evidence that the tape recording was in fact ever played for Cointment and further admitted that he never discussed the alleged conspiracy with Cointment or asked him if he participated in it. When asked what evidence he had to counter the denials by Cointment, Petite, and Clouatre that Cointment was involved or had any decision-making authority in any way in the editing or publishing of the audio recording, Painter testified:

> Well, I mean, the only evidence and the reason why we're here is that during that time they were like the Three Musketeers if you wanna go through that and the Kenny Matassa election and also in mine, every -- everything that took place negative or had an issue with anything that we've filed, the phone records and everything else show that Petite had conversations with – numerous conversations with Cointment or Clouatre on those same days before and after anything was done and if – on the phone records that we were entitled to which covers the time of whatever happened here, Clint Cointment and him talked 1,272 times, Dustin Clouatre 1,775 times.

> Now, I don't know what was in those conversations. I don't record any of --

> \*\*\*

> I'm just gonna say that circumstantially when one of them or the other one is gonna say that they didn't know what the other one's been doing, I find that hard to believe, and I want a jury to decide whether they believe it or not.

When asked whether he had any other evidence at all regarding Cointment's involvement, Painter testified:

> Well, the tape, the fact that it was done, them talking before, the benefits, who got the benefit of it happening, Wade Petite admitting that he would do . . . anything for his clients, that that was what he was supposed to do, is to get people elected and – and he did, so....

Painter further speculated that "Petite was . . . being paid by Clint Cointment in whatever capacity that was. If he did something without Clint Cointment knowing about it, then in my opinion he violated whatever agreement he had or whatever he was doing with Clint Cointment, unless Clint Cointment gave him total authority over the campaign, and if he did that, then that doesn't – that does not relieve him of liability or anybody else in this deal." Aside from these statements, Painter reiterated that the only "factual basis" he had for his allegations regarding the conspiracy were the "1,272 telephone calls to Clint Cointment and the 1,775 telephone calls to Dustin Clouatre."

When asked whether he had any evidence that Petite's testimony that Clouatre did not tell him about his plan to record Painter and that it was solely his (Petite's) decision to edit and record and publish the recording was not true, Painter explained:

> I have no – I wasn't in any conversations or privy to any phone calls or whatever else. . . . I do not believe that Wade Petite is telling the truth . . . in that statement. . . . And I think the evidence overwhelmingly shows that it's not true. . . . [W]hat I have is circumstantial evidence that I think tips the scale . . . and disproves that statement [such as] [t]elephone records, the fact that the tape was altered and he – he said he didn't – you know, he didn't alter the tape. No, he didn't, but he sure and the hell had Michael Marchand alter the tape . . . so, I mean, it's true he didn't alter the tape, but he [Petite] had it altered. . . . Again, neither [Petite nor Clouatre] has shared with me or given me any insight into that particular window that we talking about. The circumstances of the Kenny Matassa event where Clouatre and [Petite] did exactly the same thing in a unified effort to tape more than one person clandestine [sic] and go through that process of that case and this repeating the same scenario here with the same people under the circumstances that I gave you of [Petite] saying we gonna do you the same thing that we did Kenny Matassa, well, we did. I mean, Clouatre made the tape. He did what he had to do, and they published it.

*Cointment's Deposition*

Cointment testified that he was never involved in any conspiracy with anyone to defame Painter. According to Cointment, Petite did some work for him

in his 2019 campaign for Parish President, as he had in a previous campaign, which consisted of advertising and getting his message or vision out to the public. Cointment testified that payment for Petite's work on the campaign would have been made to The Pelican Post, and aside from payment for advertising, he had no other payment arrangements with The Pelican Post or Petite during the campaign. Cointment recalled having a conversation with Petite at some point, in which Petite told him that Painter had reached out to him about wanting a job or needing something for the election, and when Cointment told Petite that "is something I don't do," Petite advised him that he needed to stay away from Painter. Cointment testified that although he had heard rumors that Petite was going to be publishing an article on his blog, the first time he knew that Clouatre had recorded a conversation with Painter was when Clouatre called him to ask him to convince Petite not to publish the audio recording. Cointment testified that he called Petite regarding Clouatre's request, but Petite told him to stay out of it because "[t]his is between me and [Painter]." Cointment explained that he took that advice and stayed out of it after that conversation because he was running a campaign and needed to use his time to go out and knock on doors and "get votes and present my vision of what I was going to do as parish president." Cointment further testified that he was "[a]bsolutely not" aware that Petite was going to turn the audio recording over to the District Attorney's office.

*Clouatre's Deposition*

Clouatre testified that he had supported Cointment's unsuccessful campaign for Parish President in 2015, but he could not recall whether he provided any support, financial or otherwise, to Cointment's 2019 campaign. Clouatre's meeting with Painter arose from a text message he received from Painter on February 1, 2019 about meeting "to chat." Although Painter's text message states that he was told by a mutual friend that Clouatre wanted to meet with him,

9

Clouatre denied requesting the meeting and testified that he assumed that Painter just wanted to meet with him because he was running for Parish President and wanted to discuss his candidacy or a possible endorsement. Clouatre explained that when he met with Painter at his office at Hughes Insurance Services, he recorded the conversation because he was suspicious of Painter and believed that Painter was secretly recording him. After the meeting, Clouatre called Petite to tell him about the meeting with Painter. When Petite asked what Painter had to say, Clouatre told him that he had recorded the meeting with Painter and provided the recording to Petite. Clouatre denied that Cointment knew that he was going to meet with Painter, knew he planned to record the meeting, knew he had in fact recorded the conversation with Painter, asked him to give the recording to Petite, knew that he gave the recording to Petite, or asked him to have the recording edited or published. Clouatre testified that when he heard that Petite was going to release the audio recording, he contacted Cointment and told him that he was the one who made the recording and asked him to try to stop Petite from releasing it. Clouatre believed that Cointment did ask Petite not to publish the recording, but Petite refused. Clouatre testified that he had no knowledge of anything Cointment had done in furtherance of the alleged conspiracy in support of his campaign for Parish President.

*Petite's Deposition*

Petite testified that he owns and operates the Pelican Post News, an online blog in Ascension Parish with what Petite described as "a very politically-attuned readership," and he also works on political campaigns as a consultant. Petite testified that after hearing rumors that Painter may be planning to run for Parish President, he invited him to meet for lunch in October of 2018. Petite denied telling Painter at their lunch meeting that he was working for Cointment's campaign, explaining that while he anticipated that he would at least get some

10

advertising work out of the Cointment campaign, he had not been engaged as a political consultant for Cointment at that time. Petite also denied ever telling Painter that he had authority from Cointment to offer him a position in the Ascension Parish government or that he threatened him if he did not accept the offer. When asked about Painter's allegation that Petite responded on Cointment's behalf when Painter texted Cointment in January of 2019 requesting a meeting, Petite explained that Cointment asked for his advice about whether to meet with Painter, since Cointment did not know why Painter wanted to meet with him, and Petite offered to contact Painter to try to determine the purpose of the proposed meeting. Petite testified that Clouatre came to his house and played the audio recording for him after meeting with Painter in February 2019. He testified that Clouatre transferred the recording to his phone somehow, but he did not know how to access the recording and did not do anything with the recording until closer to the election, when he began considering whether it could be useful in his work as a political consultant. Petite testified that he did not know when or how Cointment became aware of the audio recording, but he testified that he never played any part of the recording for Cointment, and Cointment was not involved in his decision to share the recording with Babin. According to Petite, Cointment did contact him at some point on Clouatre's behalf to ask him not to publish the audio recording, but Petite declined and published the recording anyway because he felt that it was newsworthy and that "the voting public of [Ascension] Parish needed to understand what Mr. Painter is capable of." Petite acknowledged that his cell phone records showed that he had multiple phone conversations with Cointment and Clouatre around the dates of Petite's meeting with Painter, Clouatre's meeting with Painter, and the publication of the Pelican Post News story; however, Petite was adamant that Cointment had no involvement and certainly had no decision-making authority on the recording, editing, or publishing of the audio recording.

### Hughes's Deposition

Brett Hughes, the owner of Hughes Insurance Services, L.L.C., testified that he had no information whatsoever that Cointment conspired with Clouatre or Petite to record Painter, to edit the recording, or to publish the edited recording. Hughes acknowledged that phone records showed several calls by Cointment to his office in 2018 and 2019; however, he testified that he did not recall ever speaking to Cointment and noted that he supported Painter in the 2019 election.

### Babin's Deposition

District Attorney Babin testified that Petite delivered the edited audio recording of Painter to his office sometime around June of 2019, and after listening to the recording, Babin forwarded it to the state police because it contained allegations of "some type of coverup by some law enforcement agency." Babin denied that he conspired with Clouatre, Petite, or Cointment to defame Painter, and further testified that he made it clear to Painter and to the press that Painter was not a target of any investigation by his office.

### Marchand's Deposition

Marchand testified that he was contacted by Petite to edit the audio recording into various clips of Painter's statements, removing Clouatre's voice entirely from the recording. In working with Petite on this project, Marchand did not recall ever discussing anything specific to Cointment's campaign. Marchand testified that, prior to Petite's publication of the recording, he asked Cointment whether he had ever heard the recording, and Cointment told him that he had not. Marchand further testified that he did not have any information whatsoever to indicate that Cointment was aware or had conversations with Clouatre about making the recording before it was made or was involved in the decision to publish the recording.

*Painter's Affidavit*

Painter's affidavit, filed in opposition to the motions for summary judgment, contained essentially the same allegations as his deposition regarding Petite's threats and statements that he was acting on authority from Cointment and Clouatre's motivation as a supporter of Cointment's campaign to secretly record him.

*Petite's Affidavit*

Petite's affidavit, filed by Painter in opposition to the motion for summary judgment, stated that Marchand edited the audio recording of Painter published on the Pelican Post News at his (Petite's) request.

*Trial Court Ruling*

Following a hearing on Cointment's motion[2] on November 28, 2023, the trial court issued a judgment dated December 28, 2023, granting Cointment's motion for summary judgment and dismissing Painter's claims against Cointment with prejudice. The trial court prepared lengthy written reasons for judgment, in which it explained:

> Murphy Painter argues that the telephone calls on February 6 and 7, 2019 are circumstantial evidence of a plan to secretly record the February 7, 2019, conversation. Mr. Painter further argues that the October 17 and 18, 2019, telephone calls are circumstantial evidence of a plan to alter the February 7, 2019, audio recording and publish the altered audio recording on October 18, 2019.
>
> In [*Jenkins v. Arbors on the Lake Apartments*, 2021-01662, p. 5 (La. 3/22/22), 334 So.3d 746, 750], a case involving a motion for a summary judgment pursuant to Louisiana Code of Civil Procedure Article [966(D)(1)], the supreme court stated: "If circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty."
>
> [Movers] argue that the evidence offered in support of the motions for a summary judgment is **direct** evidence that proves:
>
> 1. Dustin Clouatre acted alone in secretly recording the February 7, 2019, meeting.

---

[2] There were also motions for summary judgment filed by Hughes Insurance Services, L.L.C. and Clouatre before the court at this hearing; however, those motions are not at issue in this appeal.

2. Dustin Clouatre and Clint Cointment did not conspire with Wade Petite to edit the February 7, 2019, audio recording.

3. Dustin Clouatre and Clint Cointment did not conspire with Wade Petite to publish the edited audio recording and accompanying article on October 18, 2019.

4. Wade Petite acted alone in providing the unedited recording to District Attorney Ricky Babin.

*** 

There is no direct evidence [that] Clint Cointment conspired with Dustin Clouatre and Wade Petite to defame Murphy Painter. The only evidence produced by Murphy Painter [is] the telephone calls between Dustin Clouatre, Clint Cointment[,] and Wade Petite on February 6 and 7, 2019, as well as the telephone calls on October 17 and 18, 2019. Murphy Painter argues that these telephone calls are circumstantial evidence that Clint Cointment conspired with Dustin Clouatre and Wade Petite. However, this circumstantial evidence, taken as a whole, does not exclude with a fair amount of certainty that:

1. Clint Cointment did not have prior knowledge that Dustin Clouatre would meet with Murphy [Painter] and secretly record the meeting.

2. Clint Cointment did not have prior knowledge that Dustin Clouatre would give the audio recording of the meeting to Wade Petite.

3. Clint Cointment did not have prior knowledge that Wade Petite would have the audio recording edited.

4. Clint Cointment asked Wade Petite not to publish the audio recording on October 18, [2019].

5. Clint Cointment did not have prior knowledge that Wade Petite would give the unedited audio recording to District Attorney Ricky Babin.

For this reason, Murphy Painter has failed to produce factual support sufficient to establish the existence of a genuine issue of material fact whether Clint Cointment conspired with Dustin Clouatre and Wade Petite to defame Murphy [Painter]. Accordingly, the motion for a summary judgment filed by Clint Cointment raising the defense that Murphy Painter cannot prove that Clint Cointment conspired to defame Murphy Painter is granted. Clint Cointment is dismissed with prejudice.

Painter appealed, urging that the trial court erred in granting the summary judgment and dismissing his claims against Cointment.

# DISCUSSION

A ruling on a motion for summary judgment is reviewed under the de novo standard, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Corbajal v. Chris Owens French Quarter Parade, LLC*, 2024-00191, p. 3 (La. 5/21/24), 385 So.3d 236, 237-38. If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, he is not required to negate all essential elements of the adverse party's claim, action, or defense; instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The only documents that may be filed or referenced in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. La. C.C.P. art. 966(A)(4)(a). The court shall consider only those documents filed or referenced[3] in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection. Any objection to a document shall be raised in a timely filed opposition or reply

---

[3] Pursuant to La. C.C.P. art. 966(A)(4)(b), any of the documents listed in La. C.C.P. art. 966(A)(4)(a) that were previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing.

15

memorandum. The court shall consider all objections prior to rendering judgment and shall specifically state on the record or in writing whether the court sustains or overrules the objections raised. La. C.C.P. art. 966(D)(2).

When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing there is a genuine issue for trial. La. C.C.P. art. 967(B); *Corbajal*, 2024-00191 at p. 4, 385 So.3d at 238. Once a motion for summary judgment has been properly supported by the moving party, the non-moving party's failure to produce evidence of a material factual dispute mandates the granting of the motion. *Corbajal*, 2024-00191 at p. 4, 385 So.3d at 238.

The applicable substantive law determines materiality, so whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Stricker v. Greater New Orleans Expressway Commission*, 2024-0357, p. 6 (La.App. 1 Cir. 11/22/24), --- So.3d ---, ---.

Painter's claim against Cointment is that he participated in a conspiracy with Clouatre and Petite to publish defamatory statements about Painter. Louisiana Civil Code Article 2324(A) provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." To prove a conspiracy, a plaintiff must prove that: 1) an agreement existed with one or more persons to commit an illegal or tortious act; 2) the act was actually committed; 3) the act resulted in the plaintiff's injury; and 4) there was an agreement as to the intended outcome or result. *Ferguson v. Gates*, 602 F.Supp.3d 942, 954 (W.D. La. 2022). However, Article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under La. C.C. art. 2324 is not the conspiracy itself, but rather the tort, which the conspirators agreed to perpetrate and which they actually

16

commit in whole or in part. *Jones v. Americas Insurance Co.*, 2016-0904, p. 8 (La.App. 1 Cir. 8/16/17), 226 So.3d 537, 543. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act that resulted in the plaintiff's injury. The plaintiff must establish that there was an agreement as to the intended outcome or result. *Butz v. Lynch*, 97-2166, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174, *writ denied*, 98-1247 (La. 6/19/98), 721 So.2d 473.

The intentional tort alleged by Painter in this matter is defamation. Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418, p. 4 (La. 7/10/06), 935 So.2d 669, 674. Four elements are necessary to establish a claim for defamation: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault (negligence or greater) on the part of the publisher; and 4) resulting injury. *Id.*

The evidence offered in support of Cointment's motion for summary judgment was that Cointment was not aware of Clouatre's plan to record the conversation with Painter and was not involved in any decision-making regarding the editing or publishing of the recording. As noted by the trial court, Painter offered no direct evidence that Cointment had any sort of agreement with Clouatre and Petite to defame Painter. The only evidence offered by Painter in opposition to Cointment's motion for summary judgment was circumstantial, i.e., the fact that there were telephone calls made between Cointment, Petite, and Clouatre around the times the audio recording was made and was published.

Circumstantial evidence may establish the existence of a genuine issue of material fact to defeat summary judgment; however, the response of the adverse party must set forth specific facts showing a genuine issue of fact exists. *Wilson v. Reed*, 2022-0099, p. 3 (La.App. 1 Cir. 10/21/22), 354 So.3d 42, 45. Although

factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. *Id.*, 2022-0099 at p. 4, 354 So.3d at 45. As noted by the trial court, if circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. *Jenkins*, 2021-01662 at p. 5, 334 So.3d at 750. Following our de novo review of the evidence offered in support of and in opposition to Cointment's motion for summary judgment, we find that Painter's evidence consisted of mere conclusory allegations, improbable inferences, and unsupported speculation, which will not support a finding of a genuine issue of material fact as to whether Cointment conspired with others to defame Painter. Accordingly, Painter failed to satisfy his burden to defeat summary judgment and his claims against Cointment were properly dismissed.

## CONCLUSION

For the reasons set forth herein, the summary judgment dismissing Murphy Painter, Sr.'s claims against Clint Cointment, with prejudice, is affirmed. Costs of this appeal are assessed to Murphy Painter, Sr.

**AFFIRMED.**